Pedro G. **ARROYO**, Libelant,

v.

The M/V **ISLAND QUEEN II**, her engines, boilers, furniture, tackle, appliances, appurtenances, etc., Respondent.

No. 8–66.

United States District Court
D. Puerto Rico.

Oct. 14, 1966.

Harvey B. Nachman, San Juan, P. R., for libelant.

A. Santiago Villalonga, San Juan, P. R., for respondent.

## ORDER

CANCIO, District Judge.

This case has now come before this Court on a motion by Libelant to strike an affirmative defense raised by Respondent in his answer to the libel presented.

Respondent contends that "the accident alleged in the libel, if any, is one covered by the provisions of the Puerto Rico Workmen's Compensation Law and, as such, Libelant's only remedy * * * is to claim relief under said statute."

In his motion to strike this affirmative defense, Libelant points out that Respondent was not insured under the Workmen's Compensation Law of Puerto Rico in that he was not insured with the State Insurance Fund. Libelant further alleges that Respondent did not send Libelant to the State Insurance Fund, that no accident report was ever filed with the State Insurance Fund, and that Libelant received all of his treatment under the auspices of the United States Marine Hospital, as an American Seaman. Finally, Libelant contends that "assuming that in an appropriate case Workmen's Compensation would be the only remedy, the respondent is not entitled to avail itself of a statute, the terms of which were ignored by the Respondent."

Respondent now alleges that whether or not he was insured, Libelant is still only able to recover for his alleged injuries through the State Insurance Fund and may not libel Respondent. Thus the question which the Court must now decide is whether or not Libelant's remedy lies exclusively in the Workmen's Compensation Law of Puerto Rico, irrespective of the fact that Respondent did not comply with that statute; or, in the alternative, whether or not Libelant may press his case against the Respondent, irrespective of the protection that may otherwise be afforded to him under said statute.

■ It is a fundamental principle of the maritime law of the United States that it is to be uniform throughout the United States.

■ The law maritime has been developed by the commercial countries of the world for a number of centuries and is still in continuous development. It is truly a law of nations regarding things maritime. Yet, like all international law, the international law of the sea is applicable within a nation only in so far as that nation has incorporated the international law into its own law. In the United States, the law of nations has been adopted as to things maritime, subject to the power of Congress to modify it as it may think proper. The Lottawanna, 1874, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654; The Western Maid, 1922, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299.

The Island of Puerto Rico became a Territory of the United States of America under a Treaty of cession on the part of the Crown of Spain to the United States. Treaty of Paris 1898, 1 L.P.R.A. p. 17. Under this treaty it was up to Congress to decide the manner in which the Island was to be governed. Id. Article IX. Furthermore, this was a power which the People of the United States had invested in Congress aside from the fact that the governance of territories is an inherent power of a Nation. United States Constitution, Article IV.

In 1952, through a series of legislations and referenda, the Congress of the United States and Puerto Rico agreed between themselves on a form of government for Puerto Rico which was adopted in the nature of a compact. P.L. 81–600, 64 Stat. 319. Among the things agreed upon at that time was that certain provisions of the Organic Act of 1917, as amended, were to be continued in effect as the United States-Puerto Rico Federal Relations Act. 64 Stat. 319.

■ Since Puerto Rico is neither a State of the Union nor is it a territory incorporated into the United States preliminary to Statehood, not all of the provisions of the federal Constitution are applicable nor enforceable within the Commonwealth of Puerto Rico. Guerrido v. Alcoa Steamship Co., Inc., 1st Cir., 1956, 234 F.2d 349; Mora v. Mejías, 1st Cir., 1953, 206 F.2d 377; Mora v. Torres,

D.C.P.R., 1953, 113 F.Supp. 309 (affd. in Mora v. Mejías); Balzac v. People of Porto Rico, 1922, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627; Granville-Smith v. Granville-Smith, 1955, 349 U.S. 1, 75 S.Ct. 553, 99 L.Ed. 773.

■■ Jurisdiction in matters maritime is granted by the Constitution to the Federal Courts. United States Constitution Art. 3, Section 2, Clause 1. The Congress has made this jurisdiction exclusive. 28 U.S.C.A. § 1333; The Glide, 1897, 167 U.S. 606, 623, 17 S.Ct. 930, 42 L.Ed. 296. It is obvious that the maritime law of the United States is very closely related to the commerce power which was vested by the Constitution in the Congress. United States Constitution Article 1, Section 8, Clause 3. Hence, it is desirable that the law maritime of the United States be uniform throughout the national territorial waters. The Lottawanna, 1874, 21 Wall. 558, 88 U.S. 558, 222 L.Ed. 654; Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; Chelentis v. Luckenbach S.S. Co., 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646. But it is not absolutely necessary that this uniformity be perfect. Fonseca v. Prann, 1960, 1st Cir., 282 F.2d 153. Thus it is allowed that States may legislate to some extent in a manner inconsistent with the general maritime law.

■ Under the Constitution, Congress has the power to legislate in the sphere of admiralty and maritime law. Gibbons v. Ogden, 1824, 9 Wheat 1, 22 U.S. 1, 6 L.Ed. 23; The Lottawanna, ut sup.; Lord v. Steamship Co., 1880, 102 U.S. 541, 26 L.Ed. 224; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834. Regarding Puerto Rico, Congress has exercised this power on various occasions as can readily be seen from the Organic Acts of 1900 and 1917, both approved by Congress, and the Federal Relations Act, now in force on account of the compact between Congress and the People of Puerto Rico.

Foraker Act, Sections 9 and 13, 31 Stat. 79; Jones Act, Section 8, 39 Stat. 954; United States-Puerto Rico Federal Relations Act, Section 8, 64 Stat. 319. See also Guerrido v. Alcoa Steamship Co., 1st Cir., 1956, 234 F.2d 349. The resultant of the legislation in maritime matters regarding Puerto Rico is that the general admiralty and maritime law is applicable to Puerto Rican waters except where the Commonwealth of Puerto Rico has legislated in a contrary manner. Fonseca v. Prann, 1st Cir., 1960, 282 F.2d 153; Guerrido v. Alcoa Steamship Co., 1st Cir., 1956, 234 F.2d 349; Lastra v. New York & Porto Rico S.S. Co., 1st Cir., 1924, 2 F.2d 812.

The Workmen's Compensation Law of Puerto Rico provides, in certain instances, an exception to the application of the general admiralty and maritime law of Puerto Rico. Thus, under 11 L.P.R.A. § 21, it is clearly stated:

When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist.

The very terms of the statute just quoted express the will of the legislator to protect those employees who have not been insured in accordance with the Workmen's Compensation Law of Puerto Rico. In such a case, the workmen are to have the same causes of action and the employers are to have the same liabilities as if the act did not exist at all.

■ Defendant in this case comes before the Court in rather a strange position, to say the least. He admits that he has not insured his employees under the Act, which he was obliged to have done under 11 L.P.R.A. § 19, and a failure of which is penalized under 11 L.P.R.A. § 18. Having thus violated the law, he contends that this is to his advantage

**18**

and that Libelant has no action against him: that his only compensation is that which he can get under the provisions of the Act. This Act is broad and humanitarian enough to have included within its scope protection and compensation even for those employees whose employers have violated the law by not insuring their employees. 11 L.P.R.A. § 16. It has been decided by the Supreme Court of Puerto Rico that in such a case the workman injured may apply for compensation and may also bring an action in torts against the employer who failed to insure himself. Quiñones v. R. Méndez & Hno., 1940, P.R.R. 100; Castro v. Marrero, 1939, 54 P.R.R. 189.

■ Aside from this, he who seeks equity must do equity. Respondent does not come into this Court with clean hands. He is actually asking the Court to sanction his violations of the law and to do this in a manner which itself would be a violation of the law. Certainly the Court will not lend itself to this. The principles of Equity well known at Common Law and which this Court is to apply, do not allow the Court to do such a thing.*

■ Under the laws of the Commonwealth of Puerto Rico applicable to this case and under the principles of Equity which govern this Court, it is clear that the remedies provided under the general maritime law are open to this Libelant, and Respondent must avail himself of the defenses he may have under that law. Guerrido v. Alcoa Steamship Co., ut supra; Compañía Transatlántica Española v. Meléndez Torres, 1st Cir., 1966, 358 F.2d 209.

In this case, there is nothing inconsistent between the law of Puerto Rico and the general maritime law. There is nothing in the law of Puerto Rico that would exclude the application of the federal maritime and admiralty law.

* The Common Law concepts of Equity which this Court as a Federal Court is bound to apply must not be mistaken nor taken to mean the same as the principles of *Equidad* of the Civil Law (or Continental

Therefore the motion of the Libelant to strike the second affirmative defense raised by the Respondent shall be, and hereby is, granted.

Law) which are embodied in the Civil Code of Puerto Rico in Article 7, 31 L.P.R.A. § 7, and which this Court must also apply for the particular reason that it sits in Puerto Rico.