NICOLÁS LEÓN, TOMIKO'S ORIGINALS, INC., HI–FASHION FABRICS, INC., IMPERIAL TRANS PRINT CORP., demandantes y recurridos, *v.* TRANSCONEX, INC., demandada y peticionaria.

*Número:* O-84-740 *Resuelto:* 18 de junio de 1987

*A. Rivera Valdivieso*, abogado de la peticionaria; los recurridos no comparecieron.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En este recurso se cuestiona la jurisdicción de los tribunales de Puerto Rico para entender en asuntos de jurisdicción marítima y almirantazgo.

Hi-Fashion Fabrics, Inc. (en adelante Hi-Fashion) e Imperial Trans Print Corporation alegan que entregaron a Transconex, Inc. (en adelante Transconex), trece (13) bultos de telas en la ciudad de Nueva York. La mercancía debía ser entregada a Tomiko's Originals, Inc. (en adelante Tomiko's) en Puerto Rico. El 27 de marzo de 1979 Transconex entregó las telas al Sr. Claudio Fuentes quien no era representante del consignatario, ni estaba en forma alguna autorizado por éste a recibir la mercancía.

En septiembre Hi-Fashion reclamó el precio de las telas a Tomiko's, quien le informó que no había recibido los bultos. Esto fue comunicado a Transconex, quien se puso en contacto con el señor Fuentes. Éste admitió tener mercancía que no le correspondía, pero las telas por él devueltas no correspondían en calidad con las enviadas por Hi-Fashion.

Incoada demanda contra Transconex, ésta solicitó desestimar la acción por falta de jurisdicción sobre la materia. Arguyó que la controversia giraba en torno al incumplimiento del contrato de embarque, razón por la cual se trataba de una acción en almirantazgo, de jurisdicción exclusiva del Tribunal federal. El Tribunal de Distrito, Sala de Carolina, en una resolución muy bien fundamentada, resolvió que no procedía la desestimación toda vez que se trataba de una acción *in personam*, donde se solicitaban daños por incumplimiento contractual y, por ende, existía jurisdicción concurrente. Esta decisión fue confirmada por el Tribunal Superior. Inconforme Transconex acude ante nos. En esencia alega que el tribunal a quo incidió al declararse con jurisdicción sobre la materia.

Por la importancia de las cuestiones planteadas, expedimos el auto de *certiorari* para revisar la resolución recurrida. Mediante esta opinión confirmamos la sentencia del Tribunal Superior.

# I

*Naturaleza marítima de la causa de acción*

▆▆▆▆ Al considerar si determinada controversia relacionada con un contrato cae dentro del ámbito del Derecho marítimo federal, "the principal determination which emerges from a long course of decisions is the relation which the cause of action bears to the ship, the great agent of maritime enterprise and to the sea as a highway of commerce". 1 *Benedict on Admiralty*, 6ta ed., Nueva York, The Matthew Bender, Sec. 182, pág. 12-4.([1]) *North Pac. S.S. Co.* v. *Hall Bros. Co.*, 249 U.S. 119 (1919); *Insurance Co.* v. *Dunham*, 78 (11 Wall.) 1, 26 (1870); *Morewood* v. *Enequist*, 64 U.S. (23 How.) 491, 494 (1859); *The Thomas Barlum*, 68 F.2d 946, 949 (2do Cir. 1934). De acuerdo con este principio se ha determinado que una acción fundamentada en el contrato de embarque (*bill of lading*) es una reclamación que cae dentro del referido ámbito marítimo. *Armour & Co.* v. *Ft. Morgan S.S. Co.*, 270 U.S. 253, 259 (1925); *Insurance Co.* v. *Dunham*, supra; *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427 (1866); *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 47 U.S. (6 How.) 344 (1848); *Brittan* v. *Barnaby*, 62 U.S. (21 How.) 527 (1857); 1 *Benedict on Admiralty*, supra, Sec. 106, págs. 7-18 a 7-19; G. Gilmore y C. Black, *The Law of Admiralty*, 2da ed., Nueva York, Foundation Press, 1974, pág. 22. Según lo anterior, es inescapable concluir que la causa de acción de autos, donde se reclama compensación por el incumplimiento del

---

([1]) En dicho tratado se añade que: " ... [a] contract relating to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment is subject to maritime law and the case is one of admiralty jurisdiction, whether the contract is to be performed on land or water". 1 *Benedict on Admiralty*, 6ta ed., Nueva York, The Matthew Bender, Sec. 182, pág. 12-4.

contrato de embarque, es una acción que cae dentro del ámbito del Derecho marítimo federal.

## II

*Principios generales del Derecho marítimo federal*

Antes de pasar a considerar la jurisdicción del tribunal de instancia para entender en un caso de almirantazgo, estimamos de rigor, por exigirlo nuestra función normativa, y porque sin ello nuestra disposición del recurso estaría trunca, hacer ciertas observaciones generales sobre las fuentes y el desarrollo del Derecho marítimo federal. También debemos dejar claro que en este caso son de aplicación las normas del Derecho marítimo federal, según éstas aplican en Puerto Rico. Véanse: *Archilla* v. *Smyth Worldwide Movers*, 106 D.P.R. 538, 546 escs. Núms. 4, 6 y 7 (1977); *Lastra* v. *N.Y. & P.R.S.S. Co.*, 2 F.2d 812 (1er Cir. 1924); *Guerrido* v. *Alcoa Steamship Co.*, 234 F.2d 349 (1er Cir. 1956), y su progenie, esc. Núm. 10 de esta opinión.

Ya en *Archilla* v. *Smyth Worldwide Movers*, supra, pág. 546, nos referimos a "esa entidad mística y misteriosa ... llamada el derecho federal de almirantazgo". El Derecho marítimo norteamericano, al igual que el inglés, no es parte del *common law*, su desarrollo y fuentes son distintas. 1 *Benedict on Admirality*, supra, Sec. 104; *Halsbury's Laws of England*, 3ra ed., pág. 50. En general, el Derecho marítimo inglés tomó su carácter e inspiración del Derecho Civil y de las leyes de otros estados de Europa, según éstas fueron aceptadas y modificadas por el Parlamento. 1 *Benedict on Admiralty*, supra, pág. 7-6. Esto no quiere decir que el derecho angloamericano dependa del inglés. *Talbot* v. *Commanders and Owners of Three Brigs*, 1 U.S. (1 Dall.) 95 (1784). "[T]he admiralty and maritime jurisdiction of the United States is not limited either by the restraining statutes or the judicial prohibitions of England —or by the

local traditions of the land but is to be interpreted by an original view of its essential nature and objects *and with reference to analogous jurisdictions in other countries constituting the maritime commercial world as well as the jurisdiction in England."* (Énfasis nuestro.) 1 *Benedict on Admiralty*, supra, pág. 7-8.(²) En conclusión podemos decir que el Derecho marítimo federal se nutre de diversos afluentes para formar un todo con características propias. Véase, también, S. Caselias, *The Admiralty Jurisdiction in the Commonwealth of Puerto Rico*, 22 Rev. C. Abo. P.R. 165, 166–174 (1962).

■ El Art. III, Sec. 2, Cl. 1(³) de la Constitución de Estados Unidos es la fuente jurisdiccional y de derecho sustantivo en materia marítima. En *Romero* v. *International Term. Co.*, 358 U.S. 354, 360–361 (1959), el Juez Frankfurter detalló el alcance de esta cláusula constitucional:

Article III, § 2, cl. 1 (3d provision) of the Constitution and section 9 of the Act of September 24, 1789, have from the beginning been the sources of jurisdiction in litigation based upon federal maritime law. Article III impliedly contained three grants. (1) It empowered Congress to confer admiralty and maritime jurisdiction on the "Tribunals inferior to the Supreme Court" which were authorized by Art. 1, § 8, cl. 9. (2) It empowered the federal courts in their exercise of the admiralty and maritime jurisdiction which has been conferred on them, to draw on the substantive law "inherent in the admiralty and maritime jurisdiction," *Crowell* v. *Benson*, 285 U.S. 22, 55, and to continue the development of

---

(²) Este carácter internacional del Derecho marítimo permite el uso de los códigos y tratados de comercio marítimo europeos como fuentes persuasivas de derecho. *The Maggie Hammond*, 76 U.S. (9 Wall.) 435 (1869); *Lauritzen* v. *Laren*, 345 U.S. 571 (1953); *The Scotia*, 81 U.S. (14 Wall.) 170 (1872); *The Sally*, 12 U.S. (8 Cranch) 382 (1814); *Detroit Trust Co.* v. *The Thomas Barlum*, 293 U.S. 21 (1934); *The Elfrida*, 172 U.S. 186 (1898).

(³) Esta cláusula dispone: "The judicial Power shall extend ... to all Cases of admiralty and maritime Jurisdiction."

this law within constitutional limits. (3) It empowered Congress to revise and supplement the maritime law within the limits of the Constitution. See *Crowell* v. *Benson, supra* (at 55). Véase *North Pac. S.S. Co.* v. *Hall Bros. Co.*, 249 U.S. 119, 125 (1919).

El Art. I, Sec. 8 de la Constitución federal aunque hace referencia a algunas áreas de interés marítimo, no reconoce expresamente la facultad casi exclusiva que tiene el Congreso federal para legislar en esta materia. Sin embargo, al interpretar conjuntamente la cláusula de los "poderes necesarios y apropiados"(4) de dicho artículo y el Art. III, Sec. 2 de la misma Constitución, se ha determinado que el Congreso "thus has the paramount and undisputed power to fix, determine, alter and revise the maritime law which shall prevail throughout the country; and federal statutes, if constitutional, are paramount to any judicially fashioned rules of admiralty". 1 *Benedict on Admiralty, supra*, págs. 7-23 a 7-24. Véase, también, Gilmore y Black, *op. cit.* pág. 45 y ss.

## III

*Jurisdicción de los tribunales de Puerto Rico en casos de almirantazgo*

La jurisdicción de los tribunales federales y estatales en casos como el que nos ocupa es incuestionablemente concurrente. En general, véanse: *Chelentis* v. *Luckenbach S.S. Co.*, 247 U.S. 372, 383–384 (1917); *Southern Pacific* v. *Jensen*, 244 U.S. 205, 218 (1917); *Romero* v. *International Term. Co.*, supra, págs. 359–381 (1959); 1

---

(4) La Sec. 8 del Art. I de la Constitución federal dispone: "The Congress shall have Power ... [t]o make all Laws which shall be necessary and proper for carrying into Execution to foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S.C. Const. Art. I, Sec. 8, cl. 1, 18.

*Benedict on Admiralty,* supra, Secs. 121–123, en especial págs. 8-8 a 8-10;(⁵) 14 *Wright, Miller y Cooper, Federal Practice and Procedure* Secs. 3671–3678, págs. 407–529 (2da ed. 1985).(⁶) Aunque el lenguaje de la Constitución federal parece otorgar jurisdicción exclusiva al foro federal, lo cierto es que la Ley de la Judicatura de 1879 en su Art. 9 ya reconocía la jurisdicción de ambos foros. 1 Stat. 73, 76–77. Este artículo, aún vigente con ligeras modificaciones, dispone en lo pertinente:

> The district courts shall have original jurisdiction exclusive of the courts of the states of:
> (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.* (Énfasis suplido.) 28 U.S.C. sec. 1333.

█ La cláusula *saving to suitors,* dirigida a conferir jurisdicción a los tribunales estatales y a los federales — en su esfera civil ordinaria— aplica de igual forma en Puerto Rico. *Commonwealth of Puerto Rico* v. *Sea-Land Service, Inc.,* 349 F. Supp. 964, 975 (Dist. P.R. 1970); *Santiago* v. *Sea-Land Service, Inc.,* 366 F. Supp. 1309, 1313–1314 (Dist. P.R. 1973); S. Casellas, *The Admiralty*

---

(⁵) Benedict explica: "The common law courts always had jurisdiction of a cause of action against a shipowner in contract or in tort, when he could be reached personally and money damages only were demanded. That right was not excluded by the admiralty grant in the Constitution and the concurrent right also to hear such cases as well as other cases of admiralty jurisdiction was immediately given to the newly constituted Federal judiciary. The jurisdiction of the admiralty and of the common law courts is therefore to a certain extent concurrent. The common law jurisdiction when concurrent with admiralty jurisdiction, may be exercised by state courts or, within the limitations of the Constitution and of the acts of Congress, by the United States District Courts." (Escolio omitido.) 1 *Benedict on Admiralty,* supra, pág. 8-2.

(⁶) Sobre jurisdicción concurrente en general, véanse: *Acevedo* v. *Srio. Servicios Sociales,* 112 D.P.R. 257, 259 (1982); *Dowd Box* v. *Courtneg,* 368 U.S. 502, 507–508 (1962).

*Jurisdiction in the Commonwealth of Puerto Rico*, supra, págs. 176–177, esc. 42 y texto que le acompaña.

■ La excepción más común a esta norma general de jurisdicción concurrente es cuando la acción marítima es contra la nave, *in rem*, en cuyo caso sólo los tribunales federales de almirantazgo tienen jurisdicción. Véanse: *The Moses Taylor*, supra; *The Hine* v. *Trevor*, 71 U.S. (4 Wall.) 55 (1866); *Leon* v. *Galceran*, 78 U.S. (11 Wall.) 185 (1870); *Madruga* v. *Superior Court of California*, 346 U.S. 556 (1954); *T.N.T. Marine Serv., Inc.* v. *Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 586 (5to Cir. 1983), *cert.* denegado, 464 U.S. 848; 14 *Wright, Miller y Cooper, Federal Practice and Procedure*, supra, Sec. 3672, pág. 434; 1 *Benedict on Admiralty*, supra, págs. 8-11 a 8-14.(7)

---

(7) Sobre la distinción de casos *in personam* y casos *in rem*, Gilmore y Black expresan:

"The *in personam* suit is unproblematical to the shore lawyer; it is a suit against a named natural or corporate person, asserting a personal liability. The *in rem* suit is virtually unknown outside the admiralty court, and understanding of its nature is not to be approximated without some conception of the substantive concept that underlies it: the 'maritime lien'. In American admiralty law, the maritime lien is a necessary condition for success in the suit *in rem*." (Escolios omitidos.) G. Gilmore y C. Black, 2da ed., Nueva York, Foundation Press, 1974, pág. 35.

La acción *in rem*, según el caso, puede ser contra el barco o contra la carga.

Otras excepciones reconocidas, según resumidas por N. J. Healy y D. J. Sharpe, *Admiralty*, 2da ed., St. Paul, West Pub., 1986, pág. 73, son:

"(1) Actions *in personam*, accompanied by maritime attachment or garnishment process under the Federal Rules of Civil Procedure, Supplemental Rule B. ...

" . . . . . . .

·"(3) Possessory, petitory, and partition actions *in rem* under Supplemental Rule F. ...

"(4) Actions for exoneration from or limitation of liability under Supplemental Rule F. ...

"(5) Actions against the United States under the Suits in Admiralty Act ...

"(6) Actions against the United States under the Public Vessels Act ...

"(7) Actions under the Death on the High Seas Act ...

"(8) Actions to foreclose preferred ship mortgages under the Ship Mortgage Act ...

■ El propósito de la cláusula *saving to suitors* es asegurarle al demandante la elección del foro si interesa un remedio meramente estatal y no propio de la jurisdicción de almirantazgo. *Cf. Romero* v. *International Term. Co.,* supra. Dicha cláusula le garantiza la consecución de un *remedio* estatal. Véanse: *The Moses Taylor,* supra; 1 *Benedict on Admiralty,* supra, Sec. 122, pág. 8-7.

■ El significado preciso de lo que constituye un "remedio estatal" ha sido motivo de diversas opiniones y comentarios por los tribunales y los tratadistas. Se ha discutido sobre si este concepto lo que le permite a los tribunales estatales es aplicar derechos estatales a situaciones de naturaleza marítima o si lo que permite es usar los tribunales estatales para poner en vigor el Derecho marítimo federal mediante los procedimientos de dichos tribunales. Véase *Caldarola* v. *Eckert,* 332 U.S. 155, 157–158 (1946). La posición prevaleciente, la cual seguimos, es que al amparo de la cláusula *saving to suitors,* cuando existe jurisdicción concurrente, los tribunales estatales retienen facultad para poner en vigor mediante sus procedimientos el Derecho marítimo federal. En *Chelentis* v. *Luckenbach S.S. Co.,* supra, pág. 384, se expresa, luego de hacer un recuento de la jurisprudencia sobre *saving to suitors,*(8) que:

"(9) Prize cases — actions *in rem* during wartime against seized enemy maritime property ....

"In addition, it was once asserted that only an admiralty court can make a pure salvage award in an action *in personam,* but there is no ruling case authority of any vintage for the assertion, and it seems to be inconsistent with the saving clause, which is discussed in Sec. D(2) immediately following." (Escolio omitido.)

(8) En *Chelentis* v. *Luckenbach S.S. Co.,* 247 U.S. 372, 383–384 (1917), se expone el desarrollo de la cláusula *saving to suitors* de la siguiente forma:

"The precise effect of the quoted clause of the original Judiciary Act has not been delimited by this court and different views have been entertained concerning it. In *Southern P. Co.* v. *Jensen,* we definitely ruled that it gave no authority to the several states to enact legislation which would work 'material

The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; *a remedy is the means employed to enforce a right or redress an injury*. Bouvier's Law Dict. Plainly, we think, *under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law*; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law. Under the circumstances here presented, without regard to the court where he might ask relief, petitioner's rights were those recognized by the law of the sea. (Énfasis suplido.)

---

prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law in its international and interstate relations.' In *The Moses Taylor*, ... we said: 'That clause only saves to suitors "the right of a common-law remedy, where the common law is competent to give it". It is not a remedy in the common-law courts, which is saved, but a common-law remedy. *A proceeding in rem*, as used in the admiralty courts, *is not a remedy afforded by the common law; it is a proceeding under the civil law.*' And in *Knapp. S. & Co.* v. *McCaffrey*, ... 'Some of the cases already cited recognized the distinction between a common-law action and a common-law remedy. Thus in *The Moses Taylor*, ... it is said of the saving clause of the Judiciary Act: "It is not a remedy in the common-law courts which is saved, but a common-law remedy." ' 'If the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common-law, and within the saving clause of the statute ... of a common-law remedy. The suit in this case being one in equity to enforce a common-law remedy, the state courts were correct in assuming jurisdiction.' " (Énfasis suplido.)

1 *Benedict on Admiralty*, supra, págs. 8-7 a 8-8, cita a *Red Crossline* v. *Atlantic Fruit*, 264 U.S. 109 (1924), a los fines de que:

" ... the right of a common-law remedy includes: *'all means* other than proceedings in admiralty which may be employed to enforce the right to redress the injury involved. It includes remedies in pias as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity as well as those enforceable in a court of law. ... A state may not provide a remedy *in rem* for any case of action within admiralty jurisdiction. ... But otherwise, the state, having concurrent jurisdiction is free to adopt such remedies and to attach to them such incidents as it sees fit.'" (Escolios omitidos y énfasis suplido.)

Véanse, también: *Seas Shipping Co., Inc.* v. *Sieracki*, 328 U.S. 85, 88–89, esc. 5 y texto que le acompaña (1945); *Kermarec* v. *Compagnie General*, 358 U.S. 625 (1959); *Pope & Talbot, Inc.* v. *Hawn*, 346 U.S. 406 (1953). 1 *Benedict on Admiralty*, supra, Sec. 122, págs. 8-5 a 8-8. Lo anterior, sin embargo, no limita a los tribunales estatales a entender sólo en los derechos de naturaleza marítima; en casos apropiados pueden también poner en vigor legislación estatal que no contravenga los principios del derecho marítimo federal.

 En estos casos de naturaleza marítima se aplica el Derecho marítimo federal, según rige en la jurisdicción de Puerto Rico. *Romero* v. *International Term. Co.*, supra; *Kermarec* v. *Compagnie Generale*, supra; *Garret* v. *Moore-McCormack*, 317 U.S. 239 (1942); *Southern Pacific Co.* v. *Jensen*, supra; *Chelentis* v. *Luckenbach S.S. Co.*, supra; *Carliste Packing Co.* v. *Sandanger*, 259 U.S. 255 (1920). Véanse, además: *Lloyd* v. *Victory Carriers, Inc.*, 167 A.2d 689 (Pa. 1962); 1 *Benedict on Admiralty*, supra, Sec. 127; T. Stevens, *Erie R.R.* v. *Tompkins and the Uniform General Maritime Law*, 64 Harv. L. Rev. 246 (1950). La intención de los forjadores de la Constitución federal fue mantener la uniformidad en esta área del derecho.(⁹) *Union Fish Co.* v. *Erickson*, 248 U.S. 308 (1919); *New Zealand Ins. Co.* v. *Earnmore S.S. Co.*, 79 F. 368 (9no Cir. 1897); *Western Fuel Co.* v. *García*, 257 U.S. 233 (1921); *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149 (1920); *Grant Smith-Porter Ship Co.* v. *Rhode*, 257 U.S. 469 (1922). En los casos en que se decide presentar la acción en el foro estatal a base de la

---

(⁹) A pesar de estos principios generales debemos recordar las palabras del Juez Frankfurter en *Romero* v. *International Term. Co.*, 358 U.S. 354, 374 (1959): "[I]f one thing is clear it is that the source of law in saving-clause actions cannot be described in absolute terms. Maritime law is not a monistic system." Véanse también: *Fonseca* v. *Prann*, 282 F.2d 153, 157 (1er Cir. 1960), *cert.* denegado, 365 U.S. 860 (1961); *Arroyo* v. *M/V Island Queen II*, 259 F. Supp. 15 (P.R. Dist. Ct. 1966).

114

cláusula de *saving to suitors,* se entiende que, "[t]he same substantive law ought to be applied as would have been applied had the suit been brought in admiralty. Specifically, the general maritime law where applicable, ought to rule, even though suit is brought in state court." Gilmore y Black, *op. cit.,* págs. 50–51.([10])

En el caso de autos, los demandantes, al amparo de la cláusula *saving to suitors,* optaron por presentar en el foro local su reclamación marítima sobre daños por incumplimiento de un contrato de embarque. A la luz de las

---

([10]) Sobre este particular de derecho marítimo sustantivo se ha reconocido que "[l]a situación de Puerto Rico provoca problemas de especial interés". *Archilla* v. *Smyth Worldwide Movers,* 106 D.P.R. 538, 546, esc. 6 (1977); R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico,* San Juan, Ed. C. de Abogados de P.R., 1986, Vol. 1, págs. 336, 361–364. Mediante el Art. IX del Tratado de París, la soberanía de Puerto Rico pasó a Estados Unidos. El gobierno federal tenía el control exclusivo del territorio y aguas de Puerto Rico. La Ley Foraker, 31 Stat. 77, L.P.R.A., Tomo 1, Documentos Históricos, dejó bajo el control federal los puertos y aguas navegables de Puerto Rico. *Gromer* v. *Standard Dredging Co.,* 224 U.S. 362 (1911). La Ley Jones de 1917, 39 Stat. 951, L.P.R.A., Tomo 1, Secs. 7–8, Documentos Históricos, cambió la situación. Una lectura integral de sus Secs. 7 y 8 nos indica que Puerto Rico tiene el mismo poder legislativo respecto a sus puertos y aguas navegables que con respecto a sus tierras y edificios, y, naturalmente, también con las mismas limitaciones.

En relación con la jurisprudencia que se ha desarrollado en torno a las Secs. 7 y 8, encontramos que en *Lastra* v. *N.Y. & P.R.S.S. Co.,* 2 F.2d 812 (1er Cir. 1924), se disputaba la aplicabilidad de la ley local de Compensación por Accidentes del Trabajo a los marineros. El Tribunal Federal de Apelaciones para el Primer Circuito resolvió que la Constitución de Estados Unidos no opera *ex proprio vigore* en Puerto Rico. Si el Congreso deseaba que rigiera en Puerto Rico el Derecho marítimo federal debía expresarlo mediante legislación específica al efecto. El Tribunal determinó que la intención congresional, a la luz de los Arts. 7, 8 y 9 de la Ley Orgánica Jones, 39 Stat. 951, L.P.R.A., Tomo 1, Documentos Históricos, consistía en otorgar a Puerto Rico amplios poderes legislativos en relación con sus aguas navegables. La conclusión del Tribunal fue contundente: el Derecho marítimo federal no aplicaba en Puerto Rico.

*Lastra* v. *N.Y. & P.R.S.S. Co.,* supra, fue parcialmente modificado en *Guerrido* v. *Alcoa Steamship Co.,* 234 F.2d 349 (1er Cir. 1956). En *Guerrido* v. *Alcoa Steamship Co.,* supra, por voz del Juez Magruder se reconsideró el tajante resultado de *Lastra* v. *N.Y. & P.R.S.S. Co.,* supra, en cuanto a la no aplicabilidad del Derecho marítimo federal a Puerto Rico. *Guerrido* v. *Alcoa Steamship Co.,* supra, dio una nueva interpretación a las Secs. 7, 8 y 9 de la Ley Jones, *supra,*

disposiciones constitucionales y estatutarias federales y la jurisprudencia antes reseñada, resolvemos que el tribunal de instancia tiene jurisdicción concurrente para entender en esta acción marítima. Al devolverse el caso, el foro de instancia deberá determinar el derecho aplicable a esta controversia ya sea alguna ley especial federal,[11] o alguna otra ley "puramente local". *Archilla* v. *Smyth Worldwide Movers*, supra, pág. 546.[12]

Por todo lo antes expuesto, *procede devolver el caso para que el ilustrado foro de instancia entienda en los méritos*

---

dejadas en vigor en el Art. 4 de la Ley de Relaciones Federales, 39 Stat. 954, 48 U.S.C. 749, L.P.R.A., Tomo 1, Documentos Históricos. Sostuvo que la aprobación de la Ley Jones no tuvo el efecto de derogar el derecho marítimo federal ya operante en Puerto Rico; que esta Ley lo que hizo fue conferir autoridad a Puerto Rico para aprobar legislación inconsistente con el Derecho marítimo federal. En ausencia de ley inconsistente el tribunal vendría obligado a aplicar el Derecho marítimo federal. *Guerrido* v. *Alcoa Steamship Co.*, supra, ha sido reafirmado en varias ocasiones. *Lusson* v. *Carter*, 704 F.2d 646 (1er Cir. 1983); *García* v. *Friesecke*, 597 F.2d 284 (1er Cir. 1979); *Cáceres* v. *San Juan Barge Co.*, 520 F.2d 305 (1er Cir. 1975); *Arroyo* v. *M/V Island Queen II*, supra; *Fonseca* v. *Prann*, supra. Véanse también las palabras del Presidente Carter al firmar la enmienda de 1980 a la Ley de Relaciones Federales, *supra*, 16 *Weekley Compilation of Presidential Documents*, Núm. 11, 12 de marzo de 1980; *Archilla* v. *Smyth Worldwide Movers*, supra, n. 6 y 7, y Serrano Geyls, *op. cit.*, pág. 363. En síntesis, la norma actual mantiene que el Derecho marítimo federal es el aplicable a las controversias de jurisdicción marítima, siempre y cuando la Asamblea Legislativa de Puerto Rico no haya legislado en esa área, en cuyo caso prevalecerá la norma local, a menos que el Congreso expresamente disponga otra cosa.

[11] Deberá examinar leyes tales como la Ley Harter de 1893, 27 Stat., 46 U.S.C. Sec. 190–196, y la *Carriage of Goods by Sea Act* ("Cogsa") de 1936, 49 Stat. 1207, 46 U.S.C. sec. 1300 *et seq.*

Sobre la vigencia de estas leyes en nuestro derecho, expresamos en *Archilla* v. *Smyth Worldwide Movers*, supra, esc. 4, pág. 546: "Aunque la Ley Harter se aprobó en 1893, ésta se incorporó a nuestro régimen jurídico en virtud de lo dispuesto en el Art. 14 de la Ley Orgánica de 1900, 31 Stat. 80, y el Art. 9 de la Ley Jones de 1917, 39 Stat. 954, hoy parte de la Ley de Relaciones Federales, 64 Stat. 319. Igual ocurre con Cogsa, hasta donde alcanzan sus disposiciones. Tal es la fuente de su aplicación en Puerto Rico."

Para un recuento del desarrollo de la Ley Harter y de Cogsa, véase *Archilla* v. *Smyth Worldwide Movers*, supra, págs. 543–545.

[12] Véase el esc. 10.

*de la controversia de forma consistente con lo aquí expuesto. Se dictará la sentencia correspondiente en la cual se confirmará la sentencia recurrida.*

El Juez Asociado Señor Negrón García concurre sin opinión escrita. El Juez Asociado Señor Rebollo López disiente sin opinión escrita.