En el Tribunal Supremo de Puerto Rico

| RIMCO, INC. Demandante-Recurrido V. PEREZ Y CIA. DE PUERTO RICO, INC. Demandado-Recurrente | Revisión 99TSPR52 |

Número del Caso: RE-94-344

Abogados de la Recurrente: LCDO. JUAN A. LOPEZ-CONWAY (CALVESBERT & BROWN)

Abogados de la Recurrida: LCDO. RAFAEL MAYORAL MORALES

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Flavio E. Cumpiano

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/12/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rimco, Inc.

    Demandante-Recurrido

       v.                      RE-94-344        Revisión

Pérez y Cía. de Puerto Rico,
Inc.

    Demandado-Recurrente

Opinión del Tribunal emitida por el Juez Presidente, señor Andréu García

San Juan, Puerto Rico, a 12 de abril de 1999

I

La demandante-recurrida, Rimco, Inc., presentó esta causa de acción contra la demandada-recurrente, Pérez & Cía. de P.R., Inc., (en adelante "Pérez & Cía."), reclamándole el pago adeudado, más intereses, por servicios de reparación, instalación y suministro de piezas de repuesto de un motor Caterpillar en el buque "Alraigo", del cual Pérez & Cía. era agente de puerto. Pérez & Cía. negó la existencia de la deuda reclamada y adujo como defensa la prescripción de dicha reclamación.

Atendidas las alegaciones de las partes y la prueba documental y testifical vertida en la vista en su fondo, el antiguo Tribunal Superior, Sala de San Juan, resolvió que Pérez & Cía. contrató con

Rimco, Inc., la reparación del buque del cual era agente de puerto y que le es responsable a Rimco, Inc., por los servicios prestados en la suma principal de $12,379.57, e intereses al 7% anual, más las costas, gastos y $1,850.00 en concepto de honorarios de abogado. En la sentencia nada expresó sobre la defensa de prescripción levantada por la demandada.

Oportunamente, Pérez & Cía. presentó recurso de revisión ante nos, en el cual señaló:

Que "[e]rró el Tribunal Superior al determinar que la acción entablada por la parte demandante no está prescrita."

Que "[e]rró el Tribunal Superior al determinar que Pérez contrató directamente con RIMCO la reparación del buque "ALRAIGO", y no como agente del armador."

Habiendo expedido este tribunal el auto de revisión solicitado y estando en condiciones de resolver, procedemos a hacerlo, pero no sin antes exponer los hechos que fueron hallados probados ante el antiguo Tribunal Superior, Sala de San Juan.

II

Por no haber sido impugnadas, a continuación transcribimos como relación de hechos las determinaciones que dieron base a la sentencia dictada por el tribunal sentenciador.

1. "A. Pérez & Cía. de P.R., Inc. (Pérez & Cía.) fungía como 'port agent' o agente de puerto del buque 'Alraigo'. El 31 de marzo de 1987 el armador o dueño del buque remitió dos telex a Pérez & Cía., dirigidos además a la atención del capitán del buque. En uno le indicaba que era preciso la asistencia técnica de la firma Caterpillar a fin de reparar un motor auxiliar del buque, señalaba los problemas que afectan al motor, así como exponía los trabajos a ser realizados. Instaba a agilizar todo lo posible a fin de no demorar la salida del buque y solicitaba se le informara el costo de la reparación, pero subrayaba que no se demorara la misma por el estimado. El segundo telex instaba a preparar la reclamación por la avería del motor para ser sometida a la compañía aseguradora.

2. El mismo 31 de marzo de 1987, el señor Orlandi, Jefe de Operaciones de Pérez & Cía., llamó por teléfono a RIMCO Inc., representantes exclusivos en Puerto Rico de los motores Caterpillar, solicitándole que personal de RIMCO Inc. estuviera presente para cuando el buque 'Alraigo' llegase a Puerto Rico se reparase su motor. Luego Orlandi hizo llegar a RIMCO Inc. los telex recibidos del armador. Para RIMCO el más importante fue el telex indicativo de las averías y de las reparaciones a efectuarse y de las piezas a suplirse.

3. RIMCO Inc. realizó las reparaciones al motor del buque 'Alraigo', y suministró las piezas de repuesto requeridas,

durante los días 2, 3, 4 y 5 de abril de 1987. Entre las cosas que se encontraron estuvo el cilindro número 6 con el pistón roto y las válvulas partidas. Hubo también que reparar el sistema de enfriamiento del motor y suplantarle algunas piezas. Se hicieron numerosos otros trabajos, más o menos los requeridos en el telex. El que le hubiesen adelantado a RIMCO lo que el motor tenía adelantó el proceso. Las hojas de trabajo fueron firmadas y aceptadas por Ricardo Cementía en representación del buque. El buque partió entonces de Puerto Rico.

4. El costo de la reparación efectuada por RIMCO ascendió a $10,576.47 y el costo de las piezas de repuesto suplidas fue de $1,803.10 para un total de $12,279.57.

5. El Sr. Julián A. Ducat, tasador marino (surveyor) de la compañía española aseguradora del buque visitó las oficinas de RIMCO alrededor del 3 de abril para obtener copias de las facturas de reparación del motor. Elló llevó a RIMCO a creer que el pago de la factura sería procesado a través de la aseguradora del buque por lo que, poco más tarde, le requirió el pago a Julián A. Ducat. Este contestó que sólo actuaba de recopilador de información para la aseguradora en España, pero que no había sido él quien había ordenado las reparaciones ni había indicado ser el responsable por el pago. Señaló que el agente del buque 'Alraigo' era A. Pérez & Cía.

6. Para junio de 1987 el Gerente de Crédito de RIMCO se comunicó con funcionarios de Pérez & Cía. para reclamarle el pago de la factura. Pérez & Cía. manifestó no tener conocimiento de la factura. RIMCO se la remitió el 30 de junio de 1987. Pérez & Cía. indicó entonces que la factura no era procesable ni pagable porque Pérez & Cía. no había ordenado ni autorizado la reparación.

7. Cuando el buque 'Alraigo' fue reparado en abril de 1987, su agente era Pérez & Cía. Cuando RIMCO le remite la factura a Pérez & Cía. el 30 de junio de 1987 ya Pérez & Cía. no era el agente del buque pues desde el 20 de junio de 1987 el nuevo agente era Island Stevedoring Inc. La Sra. Mayra Villalón, Gerente General de Island Stevedoring entonces empezó a ayudar a RIMCO para tratar de obtener el pago de las facturas del armador o dueño del buque (Navieras García Minaur, de España) o de la compañía que lo tenía arrendado (Compañía Marítima de Isla de Pascua, Chile), pero todas las gestiones fueron infructuosas. El buque dejó de venir a Puerto Rico por lo que no se pudo hacer gestión de cobro directamente sobre el buque.

8. RIMCO continuó requiriéndole el pago a Pérez & Cía., haciéndolo el 3 de febrero de 1988 y 8 de septiembre de 1988. Como las facturas no fueron satisfechas, esta demanda se radicó el 25 de marzo de 1991, menos de tres años después de la última gestión acreditada de cobro de RIMCO Inc. a Pérez & Cía.

9. Para el 31 de marzo de 1987 Pérez & Cía. y RIMCO Inc. no habían hecho negocios entre sí y Pérez & Cía no tenía crédito con RIMCO Inc. No obstante, este tipo de solicitud de servicio de emergencia a buques por los agentes, incluyendo nuevos agentes, era práctica frecuente y normal. La práctica y la política es que quien es responsable del pago del servicio es el agente, que lo solicita, el que está en Puerto Rico, y el buque no tiene que ser detenido en Puerto Rico hasta efectuado el pago por el servicio. El buque se puede ir porque el agente en

Puerto Rico que solicitó el servicio es responsable frente a quien lo prestó. Una vez se termina el trabajo en el buque, y el trabajo se acepta por el capitán o por su representante, se le autoriza al buque a partir y se le cobra al agente. Como regla general, además, los suplidores de servicios, lidian y contratan con el agente del buque y rara vez lo hacen directamente con el capitán del buque o con su armero [sic].

10. Al comunicarse con RIMCO Inc. y al solicitarle los servicios para el buque, el representante de Pérez & Cía. no le hizo resguardo o negativa alguna de su responsabilidad, ni le advirtió ni le dirigió a la contratación directa con el capitán del 'Alraigo'."

II

De entrada comenzamos nuestro análisis de la causa de acción de marras evaluando la defensa de prescripción levantada por la demandada-recurrida, pues, como es harto conocido, si la causa de acción está prescrita, procede la desestimación de la demanda. Acosta Quiñones v. Matos Rodríguez, op. del 5 de abril de 1994, 94 JTS 47; Ortega v. Pou, op. del 7 de abril de 1994, 94 JTS 51. Al hacer este análisis, obligatoriamente comenzamos evaluando la naturaleza de la causa de acción ejercida y el derecho aplicable a la misma.

Naturaleza de la causa de acción

En el campo del derecho contractual la determinación de si un contrato cae dentro del ámbito del derecho marítimo dependerá del objeto y la naturaleza del contrato que se está considerando. Así, cuando el contrato regula servicios o transacciones relacionadas con el comercio marítimo, el contrato es de naturaleza marítima y, en consecuencia, se rige por las normas y principios aplicables a este campo del derecho. Ahora bien, ¿cuáles son los servicios o transacciones relacionadas con el comercio marítimo? En términos sucintos, son aquellos que están relacionados con el uso de una embarcación como tal, con el comercio o la navegación en aguas navegables, con la transportación marítima o con empleos marítimos; todo esto independientemente si el contrato está contemplado para ser ejecutado en tierra o en el mar. I Benedict on Admiralty § 182 a la pág. 12-4 (7ma ed. Revisada 1998); Herbert R. Baer, Admiralty Law of the Supreme Court § 14-1 a las págs. 464 a 466 (3ra ed. 1979 Supl. 1985); Nicolas J. Healy and David J. Sharpe, Admiralty Cases

and Materials a las págs. 46 a 55 (2da ed. 1986); León v. Transconex, Inc., 119 D.P.R. 102, 105 (1987).

Siguiendo los principios esbozados, la jurisprudencia norteamericana y los tratadistas especializados en el campo del derecho marítimo han establecido que un contrato que tiene por objeto la reparación de una embarcación cae dentro del ámbito del derecho marítimo. Benedict on Admiralty, supra, § 187 a la pág. 12-30 et seq; Admiralty Law of the Supreme Court, supra, § 14-1 a la pág. 465. Por tanto, es inescapable concluir que la causa de acción que consideramos, donde se reclama el pago de la reparación del motor auxiliar del buque Alraigo, definitivamente es de naturaleza marítima.[1]

Derecho aplicable

La naturaleza marítima de la causa de acción ejercitada por Rimco, Inc., necesariamente conlleva la aplicación del Derecho Marítimo federal, ya sea que se presente la causa de acción ante el foro federal o sea que se presente ante el foro estatal. Así lo han resuelto los tribunales federales[2] y así lo reconocimos en León v. Transconex, Inc., supra a la pág. 114, donde hicimos la siguiente expresión citando de la obra de Gilmore y Black[3]:

> "En los casos en que se decide presentar la acción en el foro estatal a base de la cláusula de *saving to suitors*, se entiende que '[t]he same substantive law ought to be applied as would have been applied had the same suit been brought in admiralty. Specifically, the general maritime law where applicable, ought to rule, even though suit is brought in state court.'"

En conclusión, en toda causa de acción donde se presentan controversias ligadas al derecho marítimo, independientemente del foro que haya sido seleccionado por el reclamante, el derecho aplicable será

---

[1] Véase también: North Pac. S.S. Co. v. Hall Bros. Co., 249 U.S. 119, 128-129 (1918), citado en Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 613 (1990).

[2] Véanse casos citados en Admiralty Cases and Materials, *supra*, a las págs. 72 a 99.

[3] G. Gilmore y C. Black, The Law of Admiralty a las págs. 50 a 51 (2da ed. 1974).

el derecho marítimo federal. No obstante, esto no significa que el derecho local sea totalmente inaplicable, pues existen casos en los que puede resultar necesario poner en vigor legislación estatal que no sea inconsistente con los principios del Derecho Marítimo federal.

En materia de prescripción de las causas de acción que surgen de contratos de naturaleza marítima, hemos resuelto que los términos recogidos en la legislación local pueden ser aplicados por analogía para determinar cuál es el período dentro del cual un reclamante debe instar su causa de acción. A tales efectos, incluimos a continuación las expresiones que hiciéramos hace varios años al determinar el término prescriptivo aplicable a las acciones relativas al cobro de contratos de fletes. Mortensen & Lange v. S.J. Mercantile Corp., 119 D.P.R. 345 (1987). Dijimos:

> "En lo que respecta a la prescripción, el Derecho Marítimo federal, por ser de creación de los tribunales de almirantazgo, no tienen estatutos de prescripción para las diversas causas de acción que surjan del mismo, excepto cuando la acción se funda en alguna ley especial. Los tribunales aplican en estos casos la doctrina en equidad de *laches*. [Citas omitidas] La aplicación de esta doctrina depende de un cuidadoso análisis de la totalidad de los hechos en cada caso. [Citas omitidas] El promovente de la acción tiene que demostrar que su tardanza no fue irrazonable, y que no causó perjuicio debido al tiempo transcurrido. [Citas omitidas] Para guiar su sana discreción al determinar la razonabilidad del tiempo transcurrido, los tribunales suelen tomar como fundamento el término de prescripción análogo de la legislación local. [Citas omitidas] Sin embargo, el estatuto análogo estatal no obliga al tribunal; ese término es sólo un elemento a considerar, entre otros, al determinar si la tardanza constituyó *laches* o no. [Citas omitidas]
>
> Lo anterior, sin embargo, no es de aplicación en todo caso. Cuando una ley reglamenta una causa de acción y especifica su término prescriptivo, el mismo gobierna dicha reclamación. En el caso de Puerto Rico, la Asamblea Legislativa tiene facultad para legislar en materias marítimas. [Citas omitidas]" Id a la pág. 357.

A tenor con el texto transcrito, resolvimos en aquella ocasión que la parte reclamante tenía que ejercer su causa de acción dentro del término de seis (6) meses establecido por el artículo 947 del Código de Comercio, 10 L.P.R.A. § 1909, para las acciones que surgen al amparo de un contrato de flete. Del mismo modo, en la oportunidad que ahora se nos presenta establecemos que las acciones derivadas de un contrato de

reparación de un buque deben ser presentadas dentro del término de prescripción que fije nuestro ordenamiento para estas causas de acción, para así evitar que se determine que hubo una dilación irrazonable.

Pero, ¿cuál es este término? Hoy, siguiendo la norma trazada en Pescadería Rosas, Inc. v. Lozada, 116 D.P.R. 474 (1985), resolvemos que es el término fijado por el artículo 948 del Código de Comercio, 10 L.P.R.A. § 1910, pues estamos ante una reclamación que surge al amparo de la reparación de una embarcación destinada a la navegación *comercial*. Como dijimos en esa ocasión:

> "El artículo [948 del Código de Comercio] no es aplicable a la reparación de toda clase de embarcaciones. El examen de la definición del término 'buque' ilustra esta aseveración. Si bien existe controversia sobre el particular, el término abarca a todo género de embarcaciones destinadas a la navegación *comercial*. [Citas omitidas]
>
> [...] [D]ebe en consecuencia demostrarse que se trata de un acto mercantil, esto es, que la nave posee la condición jurídica de 'buque' por destinarse a la navegación comercial." Id a las págs. 480 a 481.

IV

Habiendo ya establecido el derecho aplicable al caso de autos, procedamos a su solución.

El artículo 948 del Código de Comercio, *supra*, dispone en su primer inciso:

> "Prescribirán al año:
>
> Las acciones nacidas de servicios, obras, provisiones y suministros de efectos o dinero, para construir, reparar, pertrechar o avituallar los buques o mantener la tripulación, a contar desde la entrega de los efectos y dinero o de los plazos estipulados para su pago, y desde la prestación de los servicios o trabajos, si éstos no estuviesen contratados por tiempo o viaje determinados. Si lo estuviesen, el tiempo de la prescripción comenzará a contarse desde el término del viaje o del contrato que les fuere referente; y si hubiera interrupción en éstos, desde la cesión definitiva del servicio."

De una lectura simple de este artículo se desprende que la causa de acción instada por Rimco, Inc., está sujeta al período prescriptivo de un (1) que el mismo establece y que la misma está prescrita por no haber sido ejercida en tiempo. Recordemos que, como ya adelantamos, estamos ante una reclamación que surge por la reparación y suministro de piezas a

una embarcación dedicada al comercio marítimo; dichas labores se efectuaron los días 2, 3, 4 y 5 de abril de 1987, y no fue hasta el 25 de marzo de 1991 que se presentó la demanda reclamando su pago. También recordemos que aun si las gestiones de cobro que hizo Rimco, Inc., hubieran interrumpido el transcurso del término prescriptivo, <u>asunto que no estamos resolviendo</u>, la última gestión de cobro registrada fue el 8 de septiembre de 1988, casi tres años antes de la fecha en que finalmente se presentó la demanda. Por tanto, nos vemos en la obligación de ordenar la desestimación de la demanda presentada por Rimco, Inc., contra Pérez & Cía., sin necesidad de entrar a discutir el otro señalamiento de error hecho por la recurrente.

V

Por las razones antes expuestas, se dictará sentencia revocatoria de aquella dictada por el antiguo Tribunal Superior, Sala de San Juan, y se ordenará la desestimación de la demanda.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rimco, Inc.

      Demandante-Recurrido

        v.                       RE-94-344        Revisión

Pérez y Cía. de Puerto Rico,
Inc.

      Demandados-Recurrentes

SENTENCIA

San Juan, Puerto Rico, a 12 de abril de 1999

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente sentencia, se expide el auto solicitado y se revoca la sentencia emitida por el extinto Tribunal Superior, Sala de San Juan, en el caso RIMCO, Inc. v. Pérez y Cía de P.R., Inc., Civil Núm. KCD 91-0699(901). En su lugar, se ordena la desestimación de la demanda.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton no interviene. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo