MORTENSEN & LANGE, demandante y peticionaria, *v.* SAN JUAN MERCANTILE CORP. y TRANSPORTACIÓN MARÍTIMA HONDUREÑA, S.A. DE C.U., demandadas y recurridas.

*Número:* O-84-881 *Resuelto:* 30 de junio de 1987

346

*Manuel Moreda Toledo,* de *Santiago, Pérez, Bermúdez & Bruno,* abogado de la peticionaria; *Emilio Rodríguez Colón,* abogado de las recurridas.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Para mediados de 1975 Mortensen & Lange (M & L) como agentes del dueño del buque M. V. Octavus, suscribieron, a través de Brandtship U.S.A., Inc. (Brandtship), corredores intérpretes de buques,[1] dos contratos en que cedieron dicho buque en arrendamiento a Transpor-

---

[1] Corredores intérpretes de buques es una "[c]lase de Agentes Mediadores de Comercio reconocidos por el C. de C., cuya misión principal es intervenir en los contratos de tipo marítimo (fletamento, seguro, préstamos a la gruesa, etc.),

tación Marítima Hondureña, S.A. de C.U. (T.M.H.),[2] para que ésta transportara dos cargamentos de madera de Puerto Cortés, Honduras, a San Juan, Puerto Rico. Un embarque llegaría a San Juan en julio de 1975 y el otro en agosto del mismo año. En ambos contratos las partes acordaron que la arrendataria T.M.H. sufragaría los costos y gastos que se incurrieran en la descarga del M. V. Octavus.

M & L, también por mediación de Brandtship, contrató a la San Juan Mercantile Corporation (Mercantile) para que descargara la mercancía y representara en relación con las operaciones de dicho buque en San Juan.

Mercantile tenía, además, un contrato de agencia con T.M.H., en virtud del cual le servía de agente y se encargaba de la descarga de los buques que ésta le refería. De acuerdo con Mercantile, la costumbre establecida entre ellos era que Mercantile cobraba el flete a los consignatarios y luego de descontar los gastos incurridos por concepto de muellaje, tiempo perdido, tiempo extra y comisión por concepto de fletes, le remesaba el balance.[3] En relación con los viajes

---

así como ayudar a los capitanes y sobrecargos de los buques extranjeros y servirles de intérpretes traduciendo los documentos que éstos les presenten, por lo que deberán tener conocimiento de dos lenguas vivas extranjeras. También podrán representar en juicio a dichos capitanes o sobrecargos cuando no comparezcan ellos, ni el naviero ni el consignatario del buque". J. M. Codera Martín, *Diccionario de Derecho Mercantil*, Madrid, Ed. Pirámide, 1979, pág. 86.

[2] T.M.H. es un *fletante*, que se define como una "[p]ersona o entidad que se obliga, mediante un precio convenido llamado flete, a trasladar de un puerto a otro, bajo su responsabilidad, a bordo de un buque determinado o indeterminado, las mercancías objeto del contrato de transporte marítimo o del contrato de fletamento recibidas en tiempo y forma convenidos del fletador (cargador) para ser entregadas en el punto de destino al consignatario que figure en el conocimiento de embarque o a quien éste hubiera hecho cesión de sus derechos". Codera Martín, *op. cit.*, pág. 132.

[3] De acuerdo con el Sr. Baldomero Collazo Díaz, Gerente General de M. & L.: *muellaje* "es lo que cobra la Autoridad de los Puertos por mover mercancía en el muelle"; *tiempo perdido* —es cuando el buque se atrasa y hay que pagarle ese tiempo a los estibadores; *tiempo extra* —es el diferencial que hay que pagarle

del M. V. Octavus de julio y agosto de 1975, T.M.H. alegó que le dio a Mercantile instrucciones específicas de remesar el flete directamente a Brandtship, el agente de M & L Mercantile, según la costumbre antes descrita, descontó de los fletes las costas y los gastos incurridos en la descarga del buque antes de remitirlos a Brandtship. M & L, por su parte, alegó que Brandtship había instruido específicamente a Mercantile, como sus agentes, que le remitiese los fletes completos sin descontar los costos y gastos incurridos en la descarga. Le indicó, además, que estos gastos debería descontarlos de la cuenta de T.M.H., ya que, contractualmente T.M.H. se había comprometido con M & L a sufragar los costos y gastos que se incurriesen en la descarga del M. V. Octavus. A pesar de estas instrucciones y advertencias, Mercantile procedió a realizar los descuentos antes de remesar los fletes.

Tres años y siete meses más tarde, el 16 de febrero de 1979, M & L presentó una demanda en el Tribunal de Distrito, Sala de San Juan, contra Mercantile y T.M.H. para recobrar la parte de los fletes que le fuera descontada. Mercantile contestó la demanda y levantó, entre otras, la defensa de prescripción. Alegó que la reclamación estaba prescrita por haber transcurrido el término de seis (6) meses dispuesto en el Art. 947 del Código de Comercio, 10 L.P.R.A. sec. 1909.(4) En relación con esta defensa Mercantile presentó una moción de sentencia sumaria la cual, el 5 de

a los estibadores cuando trabajan después de las 4:00 de la tarde, en día feriado, el sábado o el domingo; *comisión por concepto de flete* —es la comisión que se cobra por recoger los fletes y remesarlos". Deposición de 16 de octubre de 1980. (Anejo B.)

(4) El Art. 947 del Código de Comercio, 10 L.P.R.A. sec. 1909, dispone:

"Las acciones relativas al cobro de portes, fletes, gastos a ellos inherentes y de la contribución de averías comunes, prescribirán a los seis meses de entregar los efectos que los adeudaron.

"El derecho al cobro del pasaje prescribirá en igual término, a contar desde el día en que el viajero llegó a su destino, o del [día] en que debía pagarlo."

diciembre de 1980, fue denegada por entender el Tribunal de Distrito que este artículo no era de aplicación. De esta decisión Mercantile recurrió mediante *certiorari* ante el Tribunal Superior. El 6 de marzo de 1981 el Tribunal Superior dictó sentencia que revocó la resolución del Tribunal de Distrito y concedió sentencia sumaria a favor de Mercantile. Concluyó que la acción ejercitada por M & L estaba prescrita bajo las disposiciones del Art. 947 del Código de Comercio, *supra*.[5]

De esta sentencia M & L recurre ante este Tribunal. Arguye que el Art. 947 del Código de Comercio, *supra*, no es de aplicación, que Mercantile era su agente o mandatario y que su demanda es una en daños y perjuicios por incumplimiento del contrato de agencia o mandato entre M & L y Mercantile. Esta acción, por no tener término prescriptivo establecido en el Código de Comercio, en virtud del Art. 940 de dicho Código, 10 L.P.R.A. sec. 1902,[6] le es aplicable el plazo de quince (15) años establecido en el Código Civil.[7]

Debemos determinar si el contrato ante nos es de flete o de agencia o comisión. Si determinamos que se trata de un contrato de flete, debemos entonces pasar a considerar si el Art. 947 del Código de Comercio, *supra*, es el aplicable.

---

[5] En enero de 1985 el Tribunal de Distrito dictó sentencia en rebeldía contra T.M.H. y le condena a pagar la totalidad de la reclamación de M & L. De esta sentencia no se recurrió al Tribunal Superior.

[6] Art. 940 del Código de Comercio, 10 L.P.R.A. sec. 1902:

"Las acciones que en virtud de este Código no tengan un plazo determinado para deducirse en juicio, se regirán por las disposiciones del derecho común."

[7] Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294:

"La acción hipotecaria prescribe a los veinte años, y *las personales que no tengan señalado término especial de prescripción, a los quince.*" (Énfasis suplido.)

# I

*Los términos prescriptivos del Código de Comercio*

 Los tratadistas españoles de derecho mercantil reconocen que los preceptos que integran las disposiciones sobre prescripción del Código de Comercio español, que al igual que las nuestras señalan plazos más cortos que los correlativos del Derecho Civil, "no constituyen un conjunto sistemático y completo de normas que pueda considerarse como una doctrina general sobre prescripción mercantil, sino que son tan sólo normas aisladas de supuestos especiales". J. Garrigues, *Dictámenes de Derecho Mercantil*, Madrid, Ed. Aguirre, 1976, Vol. II, pág. 841. En ausencia de normas específicas sobre prescripción, el Código de Comercio establece que regirán los preceptos del Código Civil sobre este particular. Art. 940, *supra.*

 En materia de prescripción mercantil, por ser estas normas de carácter preciso e imperativo, no se admite la formación de usos de comercio observados generalmente en cada plaza, según lo dispuesto en el Art. 2 del Código de Comercio, 10 L.P.R.A. sec. 1002, con preferencia a las disposiciones del Código Civil sobre esta materia. En ausencia de normas específicas del Código de Comercio los preceptos sobre prescripción del Código Civil constituirán derecho supletorio. Garrigues, *op. cit.*, págs. 840–843.

Los tratadistas no han discutido en toda su extensión el alcance que debe dársele al Art. 951 del Código de Comercio español, del cual procede nuestro Art. 947, *supra.* El Tribunal Supremo de España, sin embargo, ha tenido la oportunidad de interpretar este artículo en varias ocasiones. Nos sénala el Tribunal que se estableció este breve plazo de seis (6) meses para las acciones que se refieren a la entrega del cargamento y los gastos inherentes a ésta, tales como la estadía y sobreestadía, por estar la prueba para

liquidar su importe, expresa o fácilmente deducible de las condiciones del contrato. S. de 17 de enero de 1930, núm. 54, 192 Jurisprudencia Civil 309.[8] Añade que por ser el término una "limitación al ejercicio tardío de los derechos", requiere una aplicación restrictiva. S. de 31 de enero de 1983, núm. 401, I Aranzadi, Repertorio de Jurisprudencia 401. En su S. de 11 de julio de 1890, núm. 24, 68 Jurisprudencia Civil 112, en un caso donde se levantó la defensa de prescripción bajo el Art. 951 del Código de Comercio español en una acción instada para reclamar la devolución de unas tarifas pagadas en exceso el Tribunal resolvió que no aplicaba este artículo. Allí la demandada no había informado, según se había comprometido, la existencia de cierta tarifa más beneficiosa. El tribunal dictaminó que "la acción ejercitada en este pleito no se deriva del contrato de transportes, sino del pago hecho por error", por lo tanto el Art. 951 del Código Civil español no era de aplicación. Este mismo criterio se siguió en la S.

---

[8] "Que el Código de Comercio de 1885 modificó la doctrina del anterior sobre la prescripción de las obligaciones que nacen de los contratos de transporte terrestre y marítimo, distinguiendo, en primer término, los que se refieren a la entrega del cargamento de los que tienen por objeto exigir indemnización por los daños que éste hubiere sufrido durante su condición o por retraso en la misma. Y *teniendo en cuenta que las obligaciones que se derivan de la entrega del cargamento tienen su justificación, y aun la prueba para liquidar su importe, expresa o fácilmente deducible de las condiciones del mismo contrato señaló para la prescripción de las acciones relativas al cumplimiento de dichas obligaciones un término más breve que para aquellas acciones que se siguen de la infracción de las leyes sobre la custodia del cargamento o de daños* que por la demora en entregarlo puedan sobrevenir, a los objetos transportados, que, por requerir una justificación con prueba más difícil, habrían de necesitar más tiempo en la preparación de los elementos necesarios para el juicio.

"Que, por estas razones, el artículo 951 del Código de Comercio señala el término de seis meses para la prescripción de las acciones relativas al cobro de portes, fletes, gastos a ellos inherentes y averías comunes, y el número 2do. del artículo 952 del mismo Cuerpo legal el de un año para la prescripción de las que se refieren a las cuestiones surgidas sobre la entrega del cargamento o sobre indemnización por sus retrasos y daños.

"Que aunque en el artículo 951 aludido no se determina cuáles sean los gastos inherentes al cobro de aquellos conceptos que representan el pago del alquiler

de 4 de febrero de 1927, núm. 80, 173 Jurisprudencia Civil 384.

De otra parte, en un caso con hechos similares, pero donde los demandantes pagaron en exceso, porque se les requirió como condición previa a la entrega de la mercancía, el Tribunal consideró que el hecho de que no se pagó por error, sino como una condición a la entrega de la mercancía, hacía esta acción una derivada del contrato de transporte, no una por pago hecho por error. Determinó, además, que el Art. 951 del Código Civil español "tanto rige al caso en que el porteador([9]) demanda el cobro del precio, *como al* [*caso*] *en que el cargador*([10]) deduce alguna reclamación sobre el pago". (Énfasis suplido.) S. de 20 de marzo de 1911, núm. 116, 120 Jurisprudencia Civil 779. Este mismo razona-

---

del elemento utilizado para el transporte terrestre o marítimo, es procedente, atendiendo a la naturaleza similar de la obligación, estimar en dichos gastos comprendido el pago de estadías y sobreestadías a que se refiere el número 11 del artículo 652 del mismo Código de Comercio, porque, si es inherente lo que tan unido está a otra cosa que no se puede separar, así están en el documento y para los efectos de la obligación de pago, los fletes y las estadías y sobreestadías, que vienen a ser la equivalencia del flete o precio convenido por el alquiler del buque durante el tiempo en que esté a disposición del flete antes y después de los plazos establecidos para la carga o descarga, cuyos gastos tienen, según los artículos 666 al 668 del mencionado Código, iguales privilegios y garantías que el flete.

"Que esta misma doctrina está admitida en la sentencia de 17 de octubre de 1922." (Énfasis suplido.) S. de 17 de enero do 1930, núm. 54, 192 Jurisprudencia Civil 309.

([9]) *Porteador* se define como la "[p]ersona o entidad que se obliga, mediante un precio convenido, llamado porte, a trasladar de un lugar a otro, bajo su responsabilidad, las cosas objeto del contrato de transporte terrestre recibidas en tiempo y forma convenidos del cargador y a entregarlas en la misma forma en el plazo pactado al consignatario estipulado en la carta de porte. Tiene la facultad fundamental de cobrar el porte y los gastos ocasionados por las mercancías durante el transporte, así como de proceder a la venta judicial de los efectos transportados si corriesen grave riesgo de perderse.

"Sobre las obligaciones y derechos del porteador véanse los artículos 355 y siguientes del C. de C.". Codera Martín, *op. cit.*, págs. 204–205.

([10]) *Cargador* se define como "[p]ersona o entidad que tiene la obligación de entregar al porteador las cosas objeto del contrato de transporte terrestre, en tiempo y forma convenidos, y de pagar el porte acordado, salvo que se haya

miento se utilizó en la S. de 20 de mayo de 1912, núm. 77, 124 Jurisprudencia Civil 503.

El Art. 951 del Código Civil español también se aplicó a una acción instada por un fletante para reclamar la devolución de ciertas cantidades que había pagado en exceso por *demoras o estadías*, "por tratarse de gastos tan inherentes a los fletes como son las estadías y sobreestadías y de un pago hecho no por error". S. de 17 de octubre de 1922, núm. 62, 125 Jurisprudencia Civil 266, 277. Este mismo criterio fue aplicado a una reclamación por *estadías* y *sobreestadías* pagadas en exceso, S. de 17 de enero de 1930, núm. 54, 192 Jurisprudencia Civil 309.

De otra parte el Tribunal Supremo de España se negó a aplicar el Art. 951 del Código Civil español a una reclamación instada por una sociedad de estibadores para recobrar ciertas cantidades relacionadas con la estiba, descarga y transporte terrestre de la mercancía, por no aplicar este artículo al contrato de descarga y transporte terrestre, por entender que no estaban integrados uno con el otro cuando, como en ese caso, el porteador marítimo no era el mismo que descargaba. La labor de descarga fue encomendada a un tercero por el destinatario mediante un nuevo contrato independiente al de fletamento. Determinó el Tribunal que: "el aludido Art. 951 se halla legalmente concebido para la regulación del contrato de transporte y de las acciones nacidas del mismo a favor del porteador y no para aquellas que competen a otros sujetos a virtud de otros contratos, por conexos que, objetivamente, puedan estar con el de transporte". Tribunal Supremo de España,

---

estipulado que lo pague el consignatario. Tiene la facultad de interrumpir el transporte, indemnizando al porteador y de variar el destino de las cosas transportadas, siempre y cuando que no se haya desprendido de la carta de porte". Ibíd., pág. 59.

S. de 31 de enero de 1983, núm. 401, 7 Aranzadi, Repertorio de Jurisprudencia 401.

## II

*Aplicación del Art. 947 del Código Mercantil*

Analicemos los hechos del caso de autos a la luz de las normas de derecho previamente reseñadas. En primer término resolvemos que, aunque la acción se presentó contra el agente o comisionista que originalmente cobró dichos fletes a los consignatarios y no contra los consignatarios en sí, estamos ante una acción para tratar de recobrar aquella parte de los fletes que fue retenida para el pago de gastos por concepto de comisión por flete, muellaje, tiempo perdido y tiempo extra incurridos en la descarga del buque M. V. Octavus.

No estamos, obviamente, ante un caso de pago de lo indebido por error. M & L en todo momento ha sostenido que Mercantile no tenía autoridad para hacer descuentos de los fletes.

Aun si consideramos los descuentos hechos por Mercantile a los fletes como una forma involuntaria de pago de las partidas que ahora son objeto de esta acción, éstos serían gastos inherentes al flete incurridos por Mercantile al realizar la labor de descarga. Por ser estos gastos inherentes al flete las acciones relativas a su cobro se rigen por el Art. 947 del Código de Comercio, *supra*, y prescriben a los seis (6) meses. M & L contrató con T.M.H. el arrendamiento del buque y con Mercantile la descarga de la mercancía y su representación en San Juan. Mercantile, a su vez, tenía un contrato con T.M.H. donde se comprometía a la descarga de todos los buques que ésta trajera a San Juan. A la luz de las relaciones contractuales de este caso tenemos que concluir que los contratos entre Mercantile y

M & L, y Mercantile y T.M.H. están entrelazados con el contrato de transporte entre M & L y T.M.H., que existe una estrecha relación entre el fletador cargador, M & L, el fletante porteador, T.M.H. y el encargado de la descarga, Mercantile y que bajo estas circunstancias los costos y los gastos incurridos y descontados por Mercantile son gastos inherentes al flete. Rechazamos, pues, interpretar el Art. 947, *supra*, de forma limitada en las relaciones de contratos de fletes. En palabras del propio Art. 947, *supra*, el mismo es de aplicación a las reclamaciones relativas a los gastos inherentes a este tipo de contrato. Por ello, no tenemos que acudir a otras figuras del derecho.

Determinado que estamos ante un contrato de flete, procede que pasemos a considerar si es de aplicación el término prescriptivo de seis (6) meses del Código de Comercio.([11])

### III

*Prescripción marítima del Código de Comercio*

Cabe señalar, que en esta acción nuestros tribunales tienen jurisdicción para entender en la misma conforme a

---

([11]) Las partes no discutieron el aspecto jurisdiccional. El demandado peticionario alegó que se trataba de una demanda en cobro de un contrato de flete. Se ha resuelto que este tipo de contrato es marítimo. *United States* v. *Mississippi Valley Barge Line Co.*, 285 F.2d 381, 387 (8vo Cir. 1960).

De otra parte la demandante recurrida alegó que se trataba de una acción en daños y perjuicios por incumplimiento de un contrato de agencia o mandato. Se ha resuelto que el contrato general de agencia o mandato no es marítimo aunque tenga alguna relación con asuntos marítimos. *Minturn* v. *Maynard*, 17 How. (58 U.S.) 477 (1854); *Admiral Oriental Line* v. *United States*, 86 F.2d 201 (2do Cir. 1936); *Christman* v. *Maristella Compañía Naviera*, 349 F. Supp. 845, confirmado *per curiam*, 468 F.2d 620 (2do Cir. 1972); 14 *Wright, Miller & Cooper, Federal Practice and Procedure*, Sec. 3675, pág. 477. Para una decisión donde estaba involucrado un contrato de mandato o agencia que versaba sobre asuntos marítimos y se permitió que se demandara en almirantazgo en el tribunal de distrito federal, véase *Hinkins Steamship Agency* v. *Freighters, Inc.*, 351 F. Supp. 373 (D.C. Cal. 1972), confirmado *per curiam*, 498 F.2d 411 (9no Cir. 1974).

*León* v. *Transconex, Inc.*, 119 D.P.R. 102 (1987). Allí dijimos que "[l]a jurisdicción de los tribunales federales y estatales en casos como el que nos ocupa [de naturaleza marítima] es incuestionablemente concurrente".[12]

En lo que respecta a la prescripción, el Derecho Marítimo federal, por ser de creación de los tribunales de almirantazgo, no tiene estatutos de prescripción para las diversas acciones que surjan del mismo, excepto cuando la acción se funda en alguna ley especial. Los tribunales aplican a estos casos la doctrina en equidad de *laches*. *Czaplicki* v. *The Hoegh Silvercloud*, 351 U.S. 525 (1955); *Florida Bahamas Lines* v. *Steel Barge "Star 800" of Nassau*, 433 F.2d 1243 (5to Cir. 1970); *Szalkiewicz* v. *Farrell Lines*, 142 F. Supp. 496, 497 (S.D.N.Y. 1956). La aplicación de esta doctrina depende de un cuidadoso análisis de la totalidad de los hechos en cada caso. *Czaplicki* v. *The Hoegh Silvercloud*, supra. El promovente de la acción tiene que demostrar que su tardanza no fue irrazonable, y que no causó perjuicio debido al tiempo transcurrido. *Florida Bahamas Lines* v. *Steel Barge "Star 800" of Nassau*, supra. Para guiar su sana discreción al determinar la razonabilidad del tiempo transcurrido, los tribunales suelen tomar como fundamento el término de prescripción análogo de la legislación local. *Czaplicki* v. *The Hoegh Silvercloud*, supra; *Kenney* v. *Trinidad Corp.*, 349 F.2d 832, 839 (5to Cir. 1965); *McConville* v. *Florida Towing Corp.*, 321 F.2d 162 (5to Cir. 1963); *Szalkiewicz* v. *Farrell Lines*, supra; *Guerrido* v. *Alcoa Steamship Co.*, 234 F.2d 349, 358 (1er Cir. 1956). Sin embargo, el estatuto análogo estatal no obliga al tribunal; ese término es sólo un elemento a considerar, entre otros,

---

[12] No se nos ha probado, y tampoco hemos encontrado, que estemos ante algunas de las excepciones al ejercicio de jurisdicción concurrente. Véase *León* v. *Transconex, Inc.*, 119 D.P.R. 102 (1987), esc. 7 y texto que le acompaña.

al determinar si la tardanza constituyó *laches* o no. *Czaplicki* v. *The Hoegh Silvercloud,* supra; *McConville* v. *Florida Towing Corp.,* supra; *Kenney* v. *Trinidad Corp.,* supra.([13])

Lo anterior, sin embargo, no es de aplicación en todo caso. Cuando una ley reglamenta una causa de acción y especifica su término prescriptivo, el mismo gobierna dicha reclamación. En el caso de Puerto Rico, la Asamblea Legislativa tiene facultad para legislar en materias marítimas. Ley de Relaciones Federales, Art. 4, Ley de 3 de julio de 1950, 64 Stat. 319, según enmendada por la Ley Núm. 96-205 de 12 de marzo de 1980, 94 Stat. 84, que dejó en vigor el Art. 8 de la Ley Jones de 2 de marzo de 1917, 39 Stat. 954, 48 U.S.C. 749, L.P.R.A., Tomo 1, Ley de Relaciones Federales, Sec. 8; véanse: las palabras del Presidente Carter al firmar la enmienda de 1980 a la Ley de Relaciones Federales, *supra,* 16 *Weekley Compilation of Presidential Documents,* Núm. 11, 12 de marzo de 1980; *Lusson* v. *Carter,* 704 F.2d 646 (1er Cir. 1983); *García* v. *Friesecke,* 597 F.2d 284 (1er Cir. 1979); *Manuel Cáceres* v. *San Juan Barge Company,* 520 F.2d 305 (1er Cir. 1975); *Arroyo* v. *M/V Island Queen II,* 259 F. Supp. 15 (Dist.P.R. 1966); *Fonseca* v. *Prann,* 282 F.2d 153 (1er Cir. 1960), *cert.* denegado, 365 U.S. 860; *Guerrido* v. *Alcoa Steamship Co.,* 234 F.2d 349 (1er Cir. 1956); *Lastra* v. *New York & Porto Rico S. S. Co.,* 2 F.2d 812 (1er Cir. 1924), modificado en *Guerrido* v. *Alcoa Steamship Co.,* supra, págs. 354–355; también véanse: *León* v. *Transconex, Inc.,* supra, págs. 113–115, escs. 9–10; *Archilla* v. *Smyth Worldwide Movers,* 106 D.P.R. 538, 546, escs. 6–7 (1977).

---

([13]) En este caso la demanda fue presentada luego de transcurridos tres años y siete meses de surgir la causa de acción. Ese tiempo excede por mucho el término del Art. 947, *supra.* El demandante en ningún momento justificó su tardanza, ni argumentó que dicha tardanza no había causado perjuicio.

 En nuestra jurisdicción por ser civilista impera un sistema de derecho prescriptivo codificado.([14]) El Art. 947 del Código de Comercio, *supra*, establece que las acciones que surgen de un contrato de flete prescriben a los seis (6) meses. Por la aplicación directa de este artículo, o en la alternativa por su aplicación como término análogo, esta acción no puede progresar. Por tanto, resolvemos que la demanda del peticionario está prescrita.

Por los fundamentos expuestos, *se dictará sentencia en la cual se confirme la dictada por el Tribunal Superior, Sala de San Juan.*

El Juez Asociado Señor Negrón García disiente con opinión escrita, a la cual se une el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Rebollo López no intervino.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Hernández Denton.

I

Diferimos. La acción de Mortensen & Lange (Mortensen) contra San Juan Mercantile (Mercantile) no está prescrita. Su causa de acción en cobro de dinero no se apuntala en

---

([14]) Hemos resuelto que la prescripción es materia sustantiva y no procedimental, que se rige por los principios que informan al Derecho Civil. *Olmo v. Young & Rubicam of P. R., Inc.*, 110 D.P.R. 740, 742–743 (1981); *Febo Ortega v. Tribunal Superior*, 102 D.P.R. 405, 406–418 (1974). Para una discusión sobre este particular, y sobre la diferencia conceptual de los términos de prescripción en el *Common Law* y en el Derecho Civil, véase P. Salamone Velilla, *Las prescripciones y conflictos con las Reglas de Procedimiento Civil*, 42 Rev. Col. Abo. P.R. 355, 366–374 (1981).

el incumplimiento de un contrato de fletamento, sino en uno de comisión mercantil. Nos explicamos.

Según las alegaciones de las partes, surge que la peticionaria Mortensen actuaba como agente de los dueños del buque M. V. Octavus. Su mandato consistía en conseguir personas que desearan fletar el barco. En esa encomienda era auxiliada por Brandtship U.S.A., Inc. (Brandtship). Este último es un corredor e intérprete de buques, es decir, una persona que pone en contacto a otras para que contraten entre sí. Como tal, Brandtship puso en contacto a Mortensen y a Transportación Marítima Hondureña, S.A. de C.U. (T.M.H.). Ambas convinieron en un contrato de fletamento. De esta forma Mortensen advino en fletador y T.M.H. fletante.

Curiosamente, tanto Mortensen como T.M.H. contrataron a San Juan Mercantile para que los representara *a ambos* en el puerto y se encargara de descargar el buque. Esta situación peculiar de aparente conflicto de lealtades de Mercantile originaría la controversia de autos. Ya Mercantile había tenido relaciones con T.M.H. Entre ambas era costumbre que Mercantile cobrara los cargos requeridos a los destinatarios de la mercancía (consignatarios), pagara los costos incurridos en la recolección y remesara el balance a T.M.H.

Sin embargo, contrario a esta práctica usual, T.M.H. acordó con Mortensen hacerse cargo de los costos de desembarco y el cobro a los consignatarios. Como consecuencia, el pago de costos debía proceder de la ganancia de T.M.H. y no del producto bruto del cobro a los destinatarios. Mortensen le había indicado a Mercantile que le enviara el importe global que le correspondía sin descontar costos. T.M.H. alegó que le dio instrucciones idénticas. Supuestamente Mercantile no cumplió lo que sus mandantes le exigieron.

En esta etapa procesal, nuestra intervención se limita a declarar cuál es el término prescriptivo de la acción instada por Mortensen contra Mercantile. La relación entre aquél y T.M.H. no está ante nuestra consideración.

## II

Coincidimos con el criterio de que la prescripción de seis (6) meses del Art. 947 del Código de Comercio, 10 L.P.R.A. sec. 1909, es aplicable a acciones derivadas del contrato de fletamento. Ahora bien, en el presente caso discrepamos de la tesis que califica la relación jurídica entre Mortensen y Mercantile como contrato de flete.

El solo hecho de que se trate de recobrar una cantidad de dinero atribuible a fletes alegadamente retenidos impropiamente, no hace aplicable mutatis mutandis el Art. 947 precitado. La causa de acción de Mortensen está predicada en que se estableció una relación contractual *directa* con Mercantile. Bajo esta realidad, lo importante es calificar y clasificar esa relación, de forma que sepamos qué norma de prescripción le es aplicable.

En este sentido, es significativo que Mercantile pactó con Mortensen descargar el buque, cobrar el importe del flete a las destinatarias *y representarla en el puerto de San Juan en relación con todas las operaciones del buque.*

Bajo este supuesto de hechos, el Art. 1600 del Código Civil rige. Dispone:

> Por el contrato de mandato se obliga una persona *a prestar algún servicio o hacer alguna cosa, por cuenta o encargo de otra.* (Énfasis nuestro.) 31 L.P.R.A. sec. 4421.

En consideración al artículo precitado consideramos que la relación entre Mortensen y Mercantile era una de mandante y mandatario.[1] No obstante, es evidente que aquí el

---

[1] Curiosamente en *San Juan Mercantile* v. *Canadian Transport Co.,* 108 D.P.R. 211, 214 (1978), la recurrida ejercía servicios similares a los que ejerció en

mandante se dedica al comercio, y el mandato tenía por fin una operación del comercio marítimo. En estas circunstancias, inequívocamente la calificación puede precisarse como de comisión mercantil.(²) Esta calificación tiene una consecuencia valorativa jurídica distinta. Por medio del contrato de comisión, Mercantile se convirtió en lo que la doctrina española denomina "consignatario de buques".(³) A tal efecto nos dice Uría:

> [L]os consignatarios de buques asumen actualmente las funciones comerciales relativas al transporte de cargamento (carga y descarga de las mercancías, cobro del flete, etc.), tradicionalmente confiadas al capitán, y tienden a constituirse en representantes generales del naviero en los puertos de entrada de sus buques. R. Uría, *Derecho Mercantil*, 12ma ed., Madrid, Ed. Aguirre, 1982, pág. 926.

Evidentémente, la consignación de buques es un mandato. Se trata de una comisión mercantil. Uría, *op. cit.*; J. Garrigues, *Curso de Derecho Mercantil*, Madrid, Ed. Aguirre, 1979, Vol. II, pág. 600. Como tal le aplica la norma de esta última institución jurídica.

Desde esta perspectiva, en ausencia de disposición en el Código de Comercio sobre término prescriptivo para las acciones derivadas de ese contrato, es aplicable el Art. 1864 del Código Civil que dictamina quince años para el ejercicio de las acciones personales sin término fijo. 31 L.P.R.A. sec. 5294.

---

el caso de autos. En aquella ocasión expresamos que "estos servicios se designan en el tráfico marítimo como 'husbandry *agency*'". (Énfasis nuestro.)

(²) Conforme el Art. 162 del Código de Comercio, se reputará comisión mercantil el mandato, cuando tenga por objeto un acto u operación de comercio y sea comerciante o agente mediador del comercio el comitente o el comisionista. 10 L.P.R.A. sec. 1521.

(³) En Puerto Rico no existe legislación especial sobre este tipo de comerciantes. La designación de "consignatario de buques" sólo la hacemos por seguir la denominación española. Aclaramos, no obstante, que aun si Mercantile fuera otro tipo de empresario, digamos un gestor marítimo, en nada alteraría nuestra decisión, pues le aplican por igual las normas de comisión.

Por los fundamentos expuestos, *revocaríamos la sentencia recurrida y reinstalaríamos la del Tribunal de Distrito, Sala de San Juan.*